Suzanne B. Chanti, OSB #88179
schanti@chantilaw.com
Jennifer J. Middleton, OSB #071510
jmiddleton@chantilaw.com
Chanti & Middleton, PC
245 East 4th Avenue
Eugene, OR 97401
Phone: 541/683-2506
Fax:    541/683-3149
        Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| CATIE ROE,<br><br>Plaintiff,<br><br>vs.<br><br>**SYNERGY JOINT VENTURE, LLC,** dba Gold's Gym; **BETTER BODIES, INC.; RIVERSIDE FITNESS, LLC; SYNERGY FITNESS, LLC; SYNERGY GYM GROUP, LLC** (New Mexico); **SYNERGY GYM GROUP, LLC** (Oregon); **SYNERGY GYM GROUP, LLC** (Washington); **SYNERGY HEALTH CLUBS NW, LLC;** and **TROY FINFROCK,**<br><br>Defendants. | Case No. 08-6025-AA<br><br>**COMPLAINT**<br><br>**(Violation of Title VII, Violation of ORS 659A.030 – Sex Discrimination, Intentional Infliction of Emotional Distress, Assault and Battery, Wrongful Discharge)**<br><br>**Demand for Jury Trial** |

### JURISDICTIONAL ALLEGATIONS

1.

These claims arise under the Civil Rights Act of 1964, 42 USC §2000e *et seq*, as amended (Title VII), and state statutory and common laws. This Court has jurisdiction over the

federal claims under 42 USC §2000e-5(f)(3) and 42 USC §1988. This Court has jurisdiction over the state law claims pursuant to the doctrine of supplemental jurisdiction, 28 USC §1367(a).

2.

Costs and attorney fees may be awarded pursuant to the Civil Rights Act as amended, 42 USC §1988, ORS §659A.885, and FRCP 54(d).

### ALLEGATIONS OF PARTY STATUS

3.

At all material times, Plaintiff Catie Roe ("Catie Roe") was and is a female citizen of the United States, residing in Lane County, Oregon.

4.

At all material times, Defendant Synergy Joint Venture, LLC was a limited liability company owned and operated by Troy Finfrock and doing business in Lane County, Oregon as Gold's Gym.

5.

At all material times, Defendant Better Bodies, Inc. was an Oregon corporation owned and operated by Troy Finfrock.

6.

At all material times, Defendant Riverside Fitness, LLC was an Oregon Limited Liability Company owned and operated by Troy Finfrock.

7.

At all material times, Defendant Synergy Fitness, LLC was an Oregon Limited Liability Company owned and operated by Troy Finfrock.

8.

At all material times, a first Defendant Synergy Gym Group, LLC was an Oregon Limited Liability Company owned and operated by Troy Finfrock.

9.

At all material times, a second Defendant Synergy Gym Group, LLC was a New Mexico Limited Liability Company owned and operated by Troy Finfrock.

10.

At all material times, a third Defendant Synergy Gym Group, LLC was a Washington limited liability company owned and operated by Troy Finfrock.

11.

At all material times, Defendant Synergy Health Clubs, NW, LLC was an Oregon limited liability company owned and operated by Troy Finfrock.

12.

At all material times, Defendant Troy Finfrock owned the named LLC's and corporations. Troy Finfrock was the principal decision maker regarding the interrelated operations, and was the central controller of the labor relations of all entities. Those entities were his agents.

13.

At all material times, all of the above-named Defendants had interrelated operations, shared common management, and maintained centralized control of labor relations. They were all owned by Defendant Troy Finfrock. They operated as a single employer of Catie Roe. They are referred to in this Complaint collectively as "Defendants."

///

///

## ALLEGATIONS OF FACT

### 14.

Catie Roe was hired by Gold's Gym in Eugene as a Member Service and Child Care attendant in March 2006. At that time, Casey Lynn was the General Manager, Johnny Escamilla was the District General Manager, and Rene Fernandez was the Regional Operations Manager.

### 15.

Throughout her employment, Catie Roe was subjected to unwanted and offensive sexual comments and sexual advances from co-workers and management employees. These comments and advances were open and notorious and directed toward her and other female employees and continued on a nearly daily basis throughout her employment.

### 16.

Manager Lynn regularly made sexual jokes and suggested that he and Catie Roe should have a sexual relationship. His actions included but were not limited to:

a.     When she asked Manager Lynn if she could take a break, he told Catie Roe "you can take a break on one condition; you get on your knees and tell me you love me."

b.     When she was bending over to pick something up, Manager Lynn stuck his pelvis and genitals in her face and said to Catie Roe, "while you're down there..." insinuating that she should perform a sexual act.

c.     On several occasions Manager Lynn snuck up behind Catie Roe and rubbed his pelvis and genitals against her bottom.

d.     When she arrived at work with a new hairstyle, Manager Lynn told Catie Roe that she had "fuck me" hair.

### 17.

Catie Roe objected to Manager Lynn's actions. She told him that he was acting inappropriately and that she did not deserve to be treated like that.

18.

Catie Roe complained to Manager Escamilla about Manager Lynn's behavior.  She told Manager Escamilla that Manager Lynn continually made sexual advances toward her, made inappropriate jokes, and that she was afraid to be at the gym alone with Manager Lynn.  Manager Escamilla responded by saying, "it is not that big of a deal."  The manner in which he responded indicated to Catie Roe that he thought she was overreacting.  No investigation was done and no corrective action was taken.

19.

In or about April 2006, Manager Lynn resigned from his employment.

20.

In or about April 2006, Catie Roe became the Operations Manager.

21.

At the Eugene location, all of the male managers were paid on a salaried basis.  As the Operations Manager, Catie Roe was paid by the hour and paid less than the male managers.

22.

When Catie Roe was the Operations Manager, Manager Escamilla was her direct supervisor.  Manager Escamilla yelled and swore at Catie Roe and the other female employees. He regularly treated Catie Roe and other female employees with disrespect.  He used degrading nicknames to refer to female employees.  He called Catie Roe, "Catie 'Ho," "numbskull," and "dumb ass."

23.

In or about mid-May 2006, Manager Escamilla and Catie Roe started sharing an office. When she entered the shared office, Manager Escamilla regularly greeted Catie Roe by saying,

"Why the fuck are you in my office!"  Sometimes he would taunt her by not letting her in the office, preventing her from getting her work done.  Manager Escamilla frequently locked the office door, preventing Catie Roe from having access to the information she needed on her work computer.  Manager Escamilla's actions made it difficult for Catie Roe to perform her job.

24.

One of Catie Roe's duties included hiring for front desk positions.  Manager Escamilla instructed Catie Roe to hired only cute females.  Catie Roe objected and said that she would hire the most reliable and professional person and refused to focus her applicant search only on personal appearance or gender.  In or about late April 2006, Manager Escamilla handed Catie Roe a resume and said, "You have to call this girl, she has great tits."  Manager Escamilla interviewed the applicant himself and hired her.

25.

Manager Escamilla regularly talked to Catie Roe about sex, used sexually-charged words, made comments about her body, and touched her in an offensive and sexual manner.  His actions included but were not limited to the following:

a.      He told Catie Roe, "You'd be happy if you got laid, too."

b.      On several occasions, he snuck up behind Catie Roe, grazed his hips against her bottom and got so close to Catie Roe that she could feel his penis against her bottom. Catie Roe told him to stop, that his actions were inappropriate and offensive to her.

c.      When Catie Roe arrived at work, he looked her up and down and said, "Damn! You look nice," and announced to the other employees around us "Catie has a bootie on her!"

d.      He remarked to coworkers that the gym was full of "real assholes and fake boobs."

e.      He mocked a female front desk employee and referred to her as a "fucking dyke."

f.      While Catie Roe was working, he declared "Catie, I want to eat you out!"

26.

Both Manager Fernandez and Manager Escamilla regularly grabbed Catie Roe's arm and pulled her thumb back toward her wrist. Catie Roe complained that the action caused her pain and told them to stop. They both ignored her requests and continued to engage in the painful behavior. When Catie Roe complained that he was hurting her, Manager Escamilla told responded, "If it hurts, you're a pussy!" Both Manager Fernandez and Manager Escamilla used this painful hold on other female employees as well.

27.

Beginning in or about April 2006, Catie Roe complained to Lisa Schor, the Operations Manager for the Springfield location, about the way she was being treated by the male managers. Ms. Schor was Manager Fernandez' assistant and performed Human Resources work for the gyms in Springfield and Eugene. Catie Roe recounted the way Manager Lynn, Manager Escamilla and Manager Fernandez treated her and other females at the Eugene location. Ms. Schor repeatedly told Catie Roe that there was nothing she could do to help her.

28.

Catie Roe complained to Manager Escamilla about Manager Fernandez's hostile and sexually degrading behavior toward her. Shortly thereafter, Manager Escamilla started acting increasingly hostile toward Catie Roe.

29.

In or about mid-June 2006, Manager Escamilla instructed Catie Roe to pick him up at the Portland airport. He was returning from a visit to Defendants' facility in New Mexico. During the drive to Eugene, Manager Escamilla told Catie Roe that he "nailed the shit out of a front desk

girl in Albuquerque," indicating that he had had sex with an employee. He also threatened her not to tell a "fucking person" about this.

30.

Manager Fernandez regularly spoke with Catie Roe in a hostile manner and used obscenities and made sexually charged comments.

31.

During the first two weeks of July, Manager Fernandez was extremely hostile towards Catie Roe at work. He yelled at her about other people in the gym not doing their jobs. He spoke to her using a very loud and abrasive tone and used profanity repeatedly. He yelled at her in front of co-workers and gym members. She objected to the way he was treating her and indicated that his conduct was inappropriate.

32.

The next day, Catie Roe received a write up from Manager Fernandez for leaving work early and for being insubordinate. Catie Roe left work early due to a physical condition that prevented her from working. When she did so she followed policy and informed other managers. Male managers who left work early for emergency reasons were not written up.

33.

In or about mid August 2006, Catie Roe called the Oregon Bureau of Labor and Industries (BOLI) and inquired about the laws relating to employment of minors and the maximum hours that minors could work. Defendants had some minor employees working at the front desk who worked over forty (40) hours per week. Manager Escamilla had approved the number of hours. In the middle of August 2006, Catie Roe told Manager Fernandez that she had called BOLI and that to abide by the law, minors could no longer be scheduled to start work at

4:00 am when the fall school semester started.  He was very upset and said, "Why did you call the labor board?!"

34.

On or about the morning of August 30, 2006, Catie Roe called BOLI and reported that she was experiencing sexual harassment at work and inquired about her legal rights.

35.

On or about the afternoon of August 30, 2006, Manager Fernandez told Catie Roe that they were "moving people around," and that Gold's Gym was replacing her as Operations Manager.  He said that if there were a front desk position (a demotion), they might offer it to her, but there was none available.  Catie Roe asked if she had done something wrong.  Manager Fernandez said no, it was just what Defendant Finfrock wanted.

36.

Catie Roe timely filed a complaint of discrimination and retaliation with the Equal Employment Opportunities Commission (EEOC) and Oregon Bureau of Labor and Industries (BOLI).  A substantial evidence finding in her favor was issued by BOLI.  BOLI and EEOC issued Notices of the Right to Sue and this Complaint is timely filed.

**FIRST CLAIM FOR RELIEF**
**(Violation of Title VII)**

For her First Claim for Relief against all Defendants, Plaintiff Catie Roe alleges as follows:

37.

Realleges the allegations set forth in paragraphs 1 through 36 and incorporates them by reference as if fully set forth herein.

38.

Defendants discriminated against Catie Roe in the terms, conditions and privileges of her employment and created, maintained and condoned a hostile work environment, all because of her sex in violation of 42 USC §2000e, *et seq*. The comments and actions constituting the hostile work environment were severe or pervasive and interfered with Catie Roe's work.

39.

Defendants retaliated against Catie Roe because she opposed, reported, and complained about sex discrimination in her employment, in violation of 42 USC §2000e, *et seq*.

40.

As a result of the actions of Defendants, Catie Roe has suffered economic damages, including lost wages along with prejudgment interest thereon. These losses are continuing.

41.

As a result of the actions of Defendants, Catie Roe has suffered noneconomic damages, including but not limited to emotional distress, anxiety, fear, humiliation, stress, depression and loss of enjoyment in life. These damages are continuing.

42.

The actions of Defendants as described herein were intentional or taken in reckless disregard of Catie Roe's rights and punitive damages in amount to be determined by the jury should be awarded to punish Defendants and to deter them and others from acting in a similar manner in the future.

43.

As a further result of the actions of Defendants, Catie Roe is entitled to recover her reasonable attorney fees and costs incurred herein pursuant to 42 USC §1988.

## SECOND CLAIM FOR RELIEF
### (Violation of ORS 659A.030, Sex Discrimination)
### (Against All Defendants)

For her Second Claim for Relief against all Defendants, Plaintiff Catie Roe alleges as follows:

44.

Realleges the allegations set forth in paragraphs 1 through 36 and incorporates them by reference as if fully set forth herein.

45.

Defendants discriminated against Catie Roe in the terms, conditions and privileges of her employment and created, maintained and condoned a hostile work environment, all because of her sex in violation of ORS 659A.030. The comments and actions constituting the hostile work environment were severe or pervasive and interfered with Catie Roe's work.

46.

Defendants retaliated against Catie Roe because she opposed, reported, and complained about sex discrimination in her employment, in violation of ORS 659A.030.

47.

As a result of the actions of Defendants, Catie Roe has suffered economic damages, including lost wages along with prejudgment interest thereon. These losses are continuing.

48.

As a further result of the actions of Defendants, Catie Roe is entitled to recover her reasonable attorney fees and costs incurred herein pursuant to ORS 659A.885.

## THIRD CLAIM FOR RELIEF
### (Wrongful Discharge)
### (Against All Defendants)

For her Third Claim for Relief against all Defendants, Plaintiff Catie Roe alleges as follows:

49.

Realleges the allegations set forth in paragraphs 1 through 36 and incorporates them by reference as if fully set forth herein.

50.

Defendants discharged Catie Roe because she pursued a right related to employment and because she fulfilled a societal obligation or public duty by objecting to and resisting sexual harassment and discrimination in her workplace, and by calling the labor board to ensure compliance with labor laws.

51.

As a result of the actions of Defendants, Catie Roe has suffered economic damages, including lost wages along with prejudgment interest thereon. These losses are continuing.

52.

As a result of the actions of Defendants, Catie Roe has suffered noneconomic damages, including but not limited to emotional distress, anxiety, fear, humiliation, stress, depression and loss of enjoyment in life. These damages are continuing.

53.

The actions of Defendants as described herein were intentional or taken in reckless disregard of Catie Roe's rights and punitive damages in amount to be determined by the jury

should be awarded to punish Defendants and to deter them and others from acting in a similar manner in the future.

## FOURTH CLAIM FOR RELIEF
### (Intentional Infliction of Emotional Distress)
### (Against All Defendants)

For her Fourth Claim for Relief against all Defendants, Plaintiff Catie Roe alleges as follows:

54.

Realleges the allegations set forth in paragraphs 1 through 36 and incorporates them by reference as if fully set forth herein.

55.

Defendants' acts and omissions described above were taken with intent to cause Catie Roe severe emotional distress or with knowledge that their acts and omissions were substantially certain to cause Catie Roe severe emotional distress.

56.

Defendants' acts and omissions described above constitute an extraordinary transgression of the bounds of socially tolerable conduct.

57.

As a result of the actions of Defendants, Catie Roe has suffered economic damages, including lost wages along with prejudgment interest thereon.  These losses are continuing.

58.

As a result of the actions of Defendants, Catie Roe has suffered noneconomic damages, including but not limited to emotional distress, anxiety, fear, humiliation, and stress.  These damages are continuing.

59.

The actions of Defendants as described herein were intentional or taken in reckless disregard of Catie Roe's rights and punitive damages in amount to be determined by the jury should be awarded to punish Defendants and to deter them and others from acting in a similar manner in the future.

### FIFTH CLAIM FOR RELIEF
### (Assault & Battery)
### (Against All Defendants)

For her Fifth Claim for Relief against all Defendants, Plaintiff Catie Roe alleges as follows:

60.

Realleges the allegations set forth in paragraphs 1 through 36 and incorporates them by reference as if fully set forth herein.

61.

By the acts described above, Defendants knowingly and intentionally subjected Catie Roe to injurious physical contact to which she did not consent.

62.

By the acts described above, Defendants knowingly and intentionally placed Catie Roe in reasonable fear of imminent bodily harm.

63.

The acts described herein were offensive to Catie Roe and would be offensive to any reasonable person.

64.

The actions described herein caused Catie Roe to fear, reasonably, for her physical safety.

65.

As a result of the actions of Defendants, Catie Roe has suffered noneconomic damages, including but not limited to emotional distress, anxiety, fear, humiliation, and stress. These damages are continuing.

66.

The actions of Defendants as described herein were intentional or taken in reckless disregard of Catie Roe's rights and punitive damages in amount to be determined by the jury should be awarded to punish Defendants and to deter them and others from acting in a similar manner in the future.

WHEREFORE Catie Roe prays for judgment against Defendants as follows:

1.  Economic damages in the form of lost wages and, and prejudgment interest in an amount to be determined at trial;

2.  Compensatory damages in an amount to be determined at trial;

3.  Her reasonable attorney fees and costs incurred herein;

4.  Punitive damages in an amount to be determined at trial; and

5.  Such other relief as the Court deems just and equitable.

DATED this 17th day of January, 2008.

CHANTI & MIDDLETON, P.C.

By: _____
Suzanne B. Chanti, OSB #88179
Jennifer J. Middleton, OSB #071510
541/683-2506
541/683-3149
schanti@chantilaw.com
jmiddleton@chantilaw.com
Attorneys for Plaintiff Catie Roe

**PAGE 15 – COMPLAINT**